PATRICK O'CONNOR v. JAMES O'CONNOR AND CATHERINE
O'CONNOR.

*Assumpsit—Joint liability.*

A son received $100 of the purchase price of a house and lot sold
by his father, and the father delivered the balance of the
money to his son's wife for safe-keeping, and, on their refusal
to repay the money, sued them jointly to recover the same.
And it is held that there is nothing in the record tending to
show their *joint* liability.

Error to Wayne. (Brevoort, J.) Argued May 8, 1891.
Decided May 21, 1891.

*Assumpsit.* Defendants bring error. Reversed. The
facts are stated in the opinion.

*Edwin Henderson,* for appellants.

*James H. Pound,* for plaintiff.

LONG, J. This is an action · of *assumpsit,* brought in
the Wayne circuit court, where plaintiff had verdict and
judgment for the sum of $731.28. The plaintiff is the
father of the defendant James O'Connor. The defendant
Catherine O'Conner is the wife of the other defendant.

The claim on the trial in the court below was that the
plaintiff sold a house and lot in October, 1889, for $1,050;
that an incumbrance of $250 existed upon the property,
after the payment of which there remained $800, which
was counted out by the real-estate dealer who had con-
ducted the negotiations in two separate amounts of $700
and $100, respectively; that defendant James O'Connor
took the $100, while the plaintiff took the $700 and gave
it to defendant Catherine O'Connor for safe-keeping;

that $85 of the $100 taken by James was subsequently turned over to the defendant Catherine, with the consent and approval of the plaintiff, to be safely kept with the remainder. Demand was made upon the parties for the repayment of this money, and, they neglecting to pay it, this action was brought against them jointly in *assumpsit,* and a recovery permitted for the full amount of the claim, less certain moneys which it was shown upon the trial had been paid to the plaintiff.

The testimony upon which the plaintiff was permitted to recover upon the theory of the joint indebtedness was that of Andrew O'Connor, one of plaintiff's sons, who testified substantially that, in order to ascertain the situation of his father's affairs, he went to the house of James, ostensibly to borrow some money of him, and inquire if James could let him have $150 or $200. The witness then testified as follows:

"I says, 'Jim, can you let me have $150 or $200 of that money?' He says, 'I have not got enough to go into business with.' I said, 'What did you do with that money of father's?' He says, 'I have not $400 of it.'"

At the close of the testimony counsel for defendants requested the court to charge the jury:

"If the jury find that the plaintiff delivered a certain sum to Catherine O'Connor for safe-keeping, and refused to and did not permit James O'Connor to have the custody of the sum, and that he gave another sum to James O'Connor, there would be no joint liability, and defendants are entitled to your verdict."

This was refused, and the court charged the jury as follows:

"The old gentleman says he would not trust his son; that he was not trustworthy. You remember the evidence of Andrew and Andrew's wife. Both went to see James and Catherine O'Connor in regard to the money. If you believe Andrew, gentlemen,—that he went there for the

purpose of borrowing $150 or $200, and asked James to loan him $150 or $200, and that James said to him, 'We haven't that much money to put into our business,' or words to that effect,—then, gentlemen, it would show that James must have put this money into his business; and if he did have the handling of it at all, or anything to do with it, or his wife turned it over to him, he is as much liable as his wife, and your verdict will be for such sum as you find for the plaintiff."

There was no testimony in behalf of the plaintiff showing that this $700, or any part of it, was ever given over to the custody of defendant James O'Connor.   It is shown on the part of defendants by the testimony of Catherine O'Connor that she had control and custody of this money, and that it had never been turned over to James.   Under these circumstances the court was clearly wrong in refusing to charge the jury as requested by defendants' counsel. There is nothing in the record showing or tending to show the joint liability of the defendants.

The judgment must be reversed, with costs, and a new trial ordered.

CHAMPLIN, C. J., MORSE and McGRATH, JJ., concurred.  GRANT, J., did not sit.